United States District Court
Southern District of Texas
**ENTERED**
February 25, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN CARLOS DELGADO RODRIGUEZ, § § § Petitioner, § § VS. § WARDEN RANDY TATE, *et al.* § § Respondents. § | CIVIL ACTION NO. 4:26-650 |

## MEMORANDUM OPINION AND ORDER
## GRANTING WRIT OF HABEAS CORPUS

Petitioner Juan Carlos Delgado Rodriguez is detained in the custody of officials with Immigration and Customs Enforcement (ICE) at the Montgomery Processing Center. Through counsel, the petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Dkt. 1) and a motion for a temporary restraining order (Dkt. 5).

The petition and supporting documents state that the petitioner is a citizen of Mexico; that he has lived in the United States since 2007; that he is married to a United States citizen and is the sole income earner for his wife and three minor children; that USCIS recently notified him that he is documentarily qualified for an immigrant visa based on his wife's petition for him based on the extreme hardship she would suffer if they were separated or returned to Mexico; that ICE officials detained him on January 19, 2026, after an alleged traffic stop but did not accuse him of a crime or traffic violation; that he has remained in detention since that time; that he previously was arrested by ICE in 2019 and

placed in removal proceedings, but that an immigration judge dismissed the proceedings for good cause on March 25, 2022, so that he could file the waiver that USCIS recently approved; and that an immigration judge denied him a bond hearing on January 29, 2026, for lack of jurisdiction. The petitioner claims that he is not subject to mandatory detention under 8 U.S.C. § 1225(b), raising claims under the statutory language and the Due Process Clause. He seeks release from custody or, in the alternative, a bond hearing under 8 U.S.C. § 1226(a). He also requests that the respondents return of all identification documents taken from him when detained and pay for his transit back to the location where he was detained, among other relief.

On February 4, 2026, the Court entered an order for an expedited answer (Dkt. 6). The Court also entered an order to show cause (Dkt. 7) why the petitioner should not be immediately released from custody.

On February 9, 2026, the federal respondents filed a motion to dismiss the petition or, in the alternative, for summary judgment (Dkt. 8). The respondents oppose habeas relief, arguing that the petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) as held in *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026). They do not contest the material facts recited by the petitioner and do not address his due process claim.

On February 11, 2026, the petitioner filed a reply (Dkt. 9) arguing that *Buenrostro-Mendez* does not apply to him because he is not an applicant for admission, but rather is seeking consular process that will permit him to seek admission from abroad. He also

argues that his detention violates the Due Process Clause because he has had no opportunity to challenge his detention.

On February 19, 2026, the petitioner filed a status report which requests a remote hearing within five days and states that, on February 10, 2026, an immigration judge granted his motion to terminate the removal proceedings against him under federal regulations, based on his showing of the extreme hardship that his United States citizen wife would suffer if they were separated (Dkt. 10; Dkt. 10-1; Dkt. 10-2).

The petitioner raises a claim under the Due Process Clause, arguing that his current detention without an individualized review violates his rights. The Constitution guarantees due process of law to every person in the United States, regardless of the person's immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent"); *see A.A.R.P. v Trump*, 605 U.S. 91, 94 (2025) (procedural due process protections apply to removal proceedings for persons detained under the Alien Enemies Act).

The Court notes at the outset that the petitioner in this case challenges only his detention, and not his right to relief from deportation or removal. District courts across the country have recognized that "as-applied due process challenges to detention without a bond hearing are not foreclosed" by *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), or other Supreme Court precedent.[1] *Destino v. FCI Berlin, Warden*, No. 1:25-

---

[1] In 2020, the Supreme Court held that a noncitizen seeking "initial entry" to the United States enjoys only the rights provided by statute because the "power to admit or exclude aliens is

CV-374-SE-AJ, 2025 WL 4010424, at *4 n.6 (D.N.H. Dec. 24, 2025) (noting a "growing consensus" among district courts and collecting cases); *see Vieira v. De Anda-Ybarra*, 806 F. Supp. 3d 690, 697-700 (W.D. Tex. 2025); *Lopez-Arevelo v. Ripa,* 801 F. Supp. 3d 668, 681-85 (W.D. Tex. 2025); *Castro Coneo v. Almodovar*, No. 25-CV-09850 (NSR), 2025 WL 3754079, at *5 (S.D.N.Y. Dec. 29, 2025); *Rincon*, 2025 WL 3122784, at *5-*7. Many cases cited above also distinguish *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and *Demore v. Kim*, 538 U.S. 510 (2003), from the detention challenge at issue in this case. *See, e.g.*, *Destino*, 2025 WL 4010424, at *3-*8; *Rincon*, 2025 WL 3122784, at *4-*8. The Court agrees with his consensus and thus proceeds to review the petitioner's constitutional claim.[2]

When adjudicating a due process claim from a civil detainee, courts apply the three-part test from *Mathews v. Eldridge*, considering (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement

---

a sovereign prerogative" over which the political branches have plenary authority. *Thuraissigiam*, 591 U.S. at 139-40 (cleaned up) (considering case regarding noncitizen detained 25 yards from the border and for whom immigration officials rejected his "credible fear" claim for purposes of political asylum). However, a challenge to detention, rather than to immigration proceedings, does not implicate the "sovereign prerogative" on which *Thuraissigiam* relies. *See Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *5-*6 (D. Mass. Nov. 7, 2025) (discussing "entry fiction" doctrine and its purposes).

[2]     *See also I.N.S. v. St. Cyr*, 533 U.S. 289, 304–05 (2001) ("a serious Suspension Clause issue would be presented" if a statute deprived federal courts of habeas jurisdiction to review "pure questions of law").

would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Regarding the first *Mathews* factor, freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690. A noncitizen who has lived for years in the interior of the United States and established connections in the country acquires a protectible liberty interest. *Thuraissigiam*, 591 U.S. at 107 ("aliens who have established connections in this country have due process rights in deportation proceedings"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"); *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (noncitizen has a "weighty" interest in his or her right "to stay and live and work in this land of freedom" and to "rejoin . . . immediate family").

In this case, the petitioner lived in the United States for nearly 20 years before the current detention, is the sole income earner for his family, is married to a citizen, and has qualified for a hardship visa. Therefore, his liberty interest is protected. *See Vieira*, 806 F. Supp. 3d at 700; *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025); *Destino,* 2025 WL 4010424, at *12; *Barros v. Noem*, No. EP-25-CV-488-KC, 2025 WL 3154059, at *4 (W.D. Tex. Nov. 10, 2025). The fact that the respondents previously released the petitioner into the United States, and that he apparently complied with all conditions of supervision, further strengthens this interest. *See Lopez-Arevelo*, 801 F. Supp. 3d. at 685-86 (citing, *inter alia*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *Destino*, 2025 WL 4010424, at *12. The petitioner thus had acquired a protected liberty

5 / 10

interest before the detention challenged in this case. The first factor weighs heavily in the petitioner's favor.

The second factor is the risk of an erroneous deprivation of the petitioner's liberty interest by the detention. Due process requires adequate procedural protections to weigh the governmental interest against that of the individual. *See Zadvydas*, 533 U.S. at 690 ("[G]overnment detention violates [the Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections or, in certain special and narrow[,] nonpunitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint") (cleaned up). Immigrant detainees "are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (cleaned up).

The respondents have not joined issue on this second factor and identify no procedures afforded to the petitioner to provide notice, an opportunity to be heard, or any individualized determination regarding the petitioner's current detention.[3] Thus, the risk of erroneous deprivation of liberty is high. The petitioner argues that the facts of his case are materially different from the facts in *Buenrostro-Mendez* and that he is not subject to § 1225(b) (Dkt. 9, at 6-7). When "the only mechanism Petitioner has to test the propriety

---

[3]   To the extent the respondents rely on any procedures this petitioner received at his or her initial entry, those procedures are inadequate to address the liberty interest the petitioner has acquired since that time based on established connections in the United States. *See Thuraissigiam*, 591 U.S. at 107; *Verdugo-Urquidez*, 494 U.S. at 271; *Landon*, 459 U.S. at 34.

of his detention is DHS's discretionary authority," that is "no real test at all." *Tenemasa-Lema v. Hyde*, No. CV 25-13029-BEM, 2025 WL 3280555, at *9 (D. Mass. Nov. 25, 2025); *see Destino*, 2025 WL 4010424, at *13 (the petitioner's due process rights "cannot depend on a favorable exercise of discretion by the respondents," especially when the risk is heightened by the likelihood of lengthy delays in removal proceedings). This risk could be addressed through an individualized assessment such as the bond hearings that respondents, until late 2025, routinely provided. *See Lopez-Arevelo*, 801 F. Supp. 3d at 686 (an individualized hearing would provide an opportunity to be heard and a meaningful assessment of the petitioner's dangerousness and flight risk, and thus would "greatly reduce the risk of an erroneous deprivation of his liberty"); *Barros*, 2025 WL 3154059, at *4 (risk of erroneous deprivation "can be easily ameliorated through a bond hearing"). The Court concludes that this factor weighs in the petitioner's favor.

The third *Mathews* factor is the respondents' interest in the petitioner's mandatory, unreviewable detention at issue here. The respondents have not addressed this factor and do not argue their interest in mass detention under § 1225(b). To the extent the respondents rely on their general interest in enforcing the statute, their interest is insufficient to extinguish the petitioner's right to due process. *Rincon*, 2025 WL 3122784, at *6 ("legislation cannot detract from the privilege afforded by the constitution") (cleaned up) (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892), *overruled on other grounds by Kastigar v. United States*, 406 U.S. 441 (1972)). Although courts have recognized a legitimate governmental interest in preventing a detainee's flight and in protecting the community from any danger posed by the detainee, *see, e.g.*, *Gunaydin*, 784 F. Supp. 3d at

1189, these interests could be addressed by providing individualized hearings, as discussed above.[4] The third factor therefore weighs in the petitioner's favor.

The petitioner is detained without due process of law. The Court concludes, in accordance with numerous other courts considering the question, that detention under § 1225(b)(2) as applied to this petitioner, without an individualized assessment or any notice or opportunity to be heard, violates the petitioner's right to procedural due process. The petition for a writ of habeas corpus will be granted. 28 U.S.C. § 2241; 28 U.S.C. § 2243; *see Brown v. Davenport*, 596 U.S. 118, 128 (2022) ("federal courts may grant habeas relief as law and justice require") (cleaned up).

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The remedy for unlawful detention "is, of course, release." *Id.*; *see Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (based on statutory language of 28 U.S.C. § 2241(c)(3) and the common-law history of the writ, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody"). Because the respondents do

---

[4] Courts "generally have found that the cost of providing a bond hearing is relatively minimal." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025); *see Tenemasa-Lema*, 2025 WL 3280555, at *10. Additionally, courts have recognized that detention itself imposes significant costs and burdens. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (noting the "substantial social costs" of detention that separates families and removes breadwinners, caregivers, parents, siblings, and employees from the community) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 34 (D. Mass. 2025) (noting that detention of those who have been denied release on bond or the opportunity to seek release "requires the government to continue funding and overseeing [the petitioner's] detention").

not identify any process available to the petitioner, "there is no process to await." *See Aroca v. Mason*, No. 2:26-CV-00057, 2026 WL 357872, at *19 (S.D. W. Va. Feb. 9, 2026) (cleaned up) (collecting cases).[5] After reviewing the authorities and all matters of record, the Court determines that release is the appropriate habeas relief for the unlawful detention in this case.

The Court therefore **ORDERS** as follows:

1. The respondents' motion (Dkt. 8) is **DENIED**.

2. The petitioner's petition for habeas relief (Dkt. 1) is **GRANTED**.

3. The respondents are **ORDERED** to **RELEASE** the petitioner from custody to a public location, under conditions of release no more restrictive than those in place prior to the detention at issue in this case, **within 48 hours of this order**.

4. The respondents are further **ORDERED** to inform the petitioner and petitioner's counsel of the time and location of release **at least three hours before the release**.

5. The respondents are further **ORDERED** to return to the petitioner, at the time of his release from custody, any and all identification documents taken from him at the time of or during his detention.

6. Any possible or anticipated removal or transfer of the petitioner under this current detention is **PROHIBITED** and **ENJOINED.**

---

[5] In light of the Fifth Circuit's holding in *Buenrostro-Mendez*, and because the respondents do not argue that 8 U.S.C. § 1226(a) applies, the Court does not order a bond hearing under § 1226(a). *See Ahmed M. v. Bondi,* No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (collecting cases).

7. The respondents are further **ORDERED** to file a status report updating the Court within **72 hours** of this order.

8. All other pending motions are **DENIED** as moot.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on _____February 25_____, 2026.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE